Filed 5/1/26 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of MIZUKI NISHIDA and MASASHI KAMODA. <br><br> MIZUKI NISHIDA, <br><br>  Appellant, <br><br>  v. <br><br> MASASHI KAMODA, <br><br>  Respondent. | G064200 <br><br> (Super. Ct. No. 14D000683) <br><br> ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed April 30, 2026, be modified as follows:

The caption is MODIFIED to reflect that the correct superior court case number is 14D000683.

There is no change in the judgment.


SANCHEZ, J.


WE CONCUR:


MOTOIKE, ACTING P. J.


SCOTT, J.

Filed 4/30/26 (unmodified version)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of MIZUKI NISHIDA and MASASHI KAMODA. | |
| MIZUKI NISHIDA,<br><br>    Appellant,<br><br>        v.<br><br>MASASHI KAMODA,<br><br>    Respondent. | G064200<br><br>(Super. Ct. No. 14D000683)<br><br>O P I N I O N |

Appeals from orders of the Superior Court of Orange County, Julie A. Palafox and Sheila Recio, Judges. Reversed in part and affirmed in part.

De Novo Law Firm and Benjamin A. Yrungaray for Appellant.

Masson Fatini, Richard E. Masson and Susan M. Masson for Respondent.

\* \* \*

# INTRODUCTION

The marriage of Mizuki Nishida and Masashi Kamoda was ended by a judgment of dissolution entered in November 2018. In December 2018, Kamoda and Nishida entered into a stipulation to divide a remaining community asset. In January 2020, Nishida filed a civil lawsuit alleging she was fraudulently induced by Kamoda to enter into that stipulation.

The civil court transferred Nishida's lawsuit to the family law court,[1] where it eventually was dismissed as untimely pursuant to Family Code section 2122.[2] Nishida appeals from the order dismissing her case, as well as an order denying her motion for leave to amend and an order made by the civil court granting Kamoda's motion for relief from default.

We conclude the family law court erred by dismissing Nishida's lawsuit. Transfer of Nishida's civil lawsuit to the family law court resolved any issues regarding proper jurisdiction between the civil court and the family law court. Although Nishida probably should have filed a set aside motion under section 2122 in the family law court, her civil lawsuit was timely filed and imparted notice to Kamoda of her fraud and breach of fiduciary duty claims. The family law court erred by denying Nishida's motion for leave to amend because leave to amend should be liberally granted and Nishida sought to amend the complaint to seek remedies afforded under the Family Code. Finally, we conclude, the civil court did not err by granting Kamoda's motion for relief from default.

---

[1] We use the term "family law court" to refer to a court within the Family Law Division of the California Superior Court, County of Orange and the term "civil court" to refer to a court within the Civil Division of the same court.

[2] Further statutory references are to the Family Code unless otherwise designated.

# FACTS AND PROCEDURAL HISTORY
## I. Judgment of Dissolution and Stipulation

In 2014, Nishida filed a petition for dissolution of her marriage to Kamoda. In November 2018 a judgment of dissolution was entered. The judgment divided the community property, which included Kamoda's retirement benefit called the "Fourteen Golf Letter of Agreement" (the Retirement Asset) At trial, the family law court found that the value of the Retirement Asset to be $108,000 and that Nishida and Kamoda each had a 50 percent interest in it. The court ordered that the Retirement Asset be divided equally when received by Kamoda and reserved jurisdiction over it.

In December 2018, Nishida and Kamoda entered into a stipulation by which they agreed the current value of the Retirement Asset was $74,520 of which Nishida would receive $37,260. Nishida and Kamoda agreed that Kamoda would pay Nishida the $37,260 in 12 monthly installments starting on January 1, 2019. Nishida and Kamoda also agreed that Nishida would waive her right to appeal from the judgment of dissolution and from the stipulation. The stipulation was signed by a court commissioner and entered as a court order.

## II. Proceedings in the Civil Law Court
A. *Nishida's Complaint and Kamoda's Default*

In January 2020, Nishida filed a civil complaint against Kamoda in which she asserted causes of action for fraud and breach of fiduciary duty. Nishida alleged that Kamoda had misrepresented to her in late 2018 that he was going to be fired by his employer, Fourteen Golf, and, in reliance on that misrepresentation, she agreed to the stipulation by which she received only $37,260 from the Retirement Asset. We refer to this case as the Civil Action.

3

After Kamoda failed to file a timely answer, Nishida had a default entered against him in the Civil Action. Kamoda brought a motion pursuant to Code of Civil Procedure section 473, subdivision (b) to set aside the entry of default based on counsel's mistake, inadvertence, surprise, or neglect. The civil court found that "counsel's affidavit of fault is sufficient to set aside the default," and granted Kamoda's motion.

B. *Kamoda Motion for Judgment on the Pleading and the Civil Court's Order to Show Cause*

Kamoda appeared, filed an answer, and, in December 2022, filed a motion for judgment on the pleadings. In the motion, Kamoda argued the civil court lacked jurisdiction because the family law court had exclusive jurisdiction over all marital dissolution issues, and the family law court expressly retained jurisdiction in the stipulation.

In February 2023, the civil court expressed concern over "the viability of this civil tort action on jurisdictional grounds, as it appears to arise from alleged misrepresentations regarding community property that resulted in a family law dissolution judgment. The court stated: "Sections 2120 et seq. of the Family Code appear to be the exclusive remedies for Plaintiff [Nishida's] allegations and accordingly she may not now collaterally attack the family law judgment in a separate unlimited civil lawsuit." The court set an order to show cause re "Why Case Should Not Be Dismissed or Transferred to Family Law Court" (the OSC re transfer) and invited the parties to submit briefing. The hearing on Kamoda's motion for judgment on the pleadings was continued to the same date as the OSC re transfer.

On the same day as the issuance of the OSC re transfer, Nishida filed a motion for leave to file a first amended complaint.

4

C. *Transfer to the Family Law Court*

The civil court heard Kamoda's motion for judgment on the pleadings on May 12, 2023, and on May 17 issued a ruling on that motion and the OSC re Transfer. The court adopted its tentative ruling, issued five days earlier, which stated: "Pursuant to *Rubenstein* [*v. Rubenstein* (2000) 81 Cal.App.4th 1131] and res judicata principles, Sections 2120 et seq of the Family Code appear to be the exclusive remedies for Plaintiff's allegations. Whether framed as 'subject matter jurisdiction' or this civil court department's 'authority to act and make orders' is matter of semantics. At the very least, the family court enjoys 'priority of jurisdiction' over Plaintiff's claims. The court finds that Plaintiff's claims are an improper attempt to collaterally attack the family law judgment in a separate unlimited civil lawsuit." The tentative ruling also stated that Nishida's proposed amendments to the complaint, which would have renamed the causes of action and sought remedies under the Family Code, supported transferring the matter to the family law court. The civil court deemed Kamoda's motion for judgment on the pleadings to be moot.

The civil court transferred the Civil Action to the family court, where it was reassigned to a new judge. The Civil Action was consolidated with the family law case for hearing purposes and the family law case was designated the lead case.

### III. The Family Law Court's Order to Show Cause re Dismissal

During a status conference in November 2023, the family law court raised the issue of family law court jurisdiction. The court stated: "I am going to ask both parties to take the position whether the case that is now in the family court, which is the complaint that was transferred by Judge Recio,

should that be dismissed for lack of jurisdiction? Tell me why." The family law court, on its own motion, set an order to show cause "why the civil matter should not be dismissed" (the OSC re dismissal).

Nishida submitted briefing in which she argued the Family Code expressly authorized her to bring her breach of fiduciary duty claim as a civil action rather than as a family law matter, and thus the only options available to the family law court were to proceed on the matter or send it back to the civil court. Nishida also pointed out that the civil court had denied as moot Kamoda's motion for judgment on the pleadings, which sought dismissal for lack of jurisdiction.

Kamoda filed briefing in which he argued Nishida's complaint should be dismissed because the statute of limitations of section 2122 barred Nishida's breach of fiduciary duty claim. Kamoda also argued "[t]he problem is not that [Nishida]'s Complaint was filed in the civil court rather than the family law court"; rather, the problem was that Nishida's complaint did not seek relief under section 2122 from the judgment of dissolution or the stipulation.

At the hearing on the order to OSC re dismissal, the family law court found that Nishida's complaint was exclusively within the jurisdiction of the family law court and that neither the judgment of dissolution nor the stipulation precluded a fraud cause of action. However, the court concluded that Nishida's claims were time-barred under sections 2020 and 2122.

Nishida's counsel in response stated he had not briefed the issue of the statute of limitations because he believed the order to show cause was directed only to the issue of jurisdiction. Nishida's counsel asked for an opportunity to file supplemental briefing. The court granted the request and instructed counsel to focus the briefing on section 2122. In supplemental

briefing, Nishida's counsel objected to the court's procedure as unfair and contrary to the adversarial system of adjudication. Counsel argued the complaint was timely under section 2122 because the complaint alleged Nishida had discovered Kamoda's fraud in late 2019 and was filed in January 2020, well within the one–year limitations period.

## IV. Dismissal of the Civil Action

In a written ruling issued on March 21, 2024, the family law court dismissed the Civil Action. The court concluded the Civil Action was subject to family law court jurisdiction because Nishida had alleged Kamoda had made misrepresentations while Nishida and Kamoda were negotiating a family law property settlement. The court rejected Nishida's argument that the family law court lacked jurisdiction to dismiss the Civil Action and that the court's briefing schedule resulted in a denial of due process. The court concluded that Nishida's proposed amendments would only change the headings of the Civil Action and would "have no impact on [Nishida]'s failure to file a timely set aside motion in family [law] court."

Finally, the family law court concluded (1) the Civil Action was time–barred by section 2122 because it was not filed in the family law court within one year of when the fraud allegedly occurred and (2) section 1101 was inapplicable.

## DISCUSSION

## I. The Family Law Court Erred by Dismissing
## the Civil Action

A. *Jurisdiction Issues Were Resolved by Transferring the Civil Action to the Family Law Court*

We agree with the family law court that it had priority over the claims presented in the Civil Action. "After a family law court acquires jurisdiction to divide community property in a dissolution action, no other department of a superior court may make an order adversely affecting that division." (*Askew v. Askew* (1994) 22 Cal.App.4th 942, 961; see *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1450 ["Given the family law court's broad jurisdictional authority where the right to and disposition of community property are concerned, we conclude . . . the family law court had priority of jurisdiction here"].)

The family law court erred, however, to the extent it based its dismissal of the Civil Action on lack of family law court subject matter jurisdiction. As the family law court recognized, "there is no separate 'family court' per se." Indeed, "'family court' refers to the activities of one or more superior court judicial officers who handle litigation arising under the Family Code. It is not a separate court with special jurisdiction, but is instead the superior court performing one of its general duties." (*In re Chantal S.* (1996) 13 Cal.4th 196, 201 (*Chantal S.*) "'[I]f one department exercises authority in a matter which might properly be heard in another such action, although "irregular," it does not amount to a defeat of jurisdiction.'" (*People v. Madrigal* (1995) 37 Cal.App.4th 791, 795.) "Where the conflict is merely between judges of different departments of the same court, it would seem

8

that subject matter jurisdiction is not affected . . . ." (2 Witkin, Cal. Proc. (6th ed. 2026) Courts, § 284.)

Besides, any jurisdictional issue was resolved when the Civil Action was transferred to the family law court. If family law causes of action are incorrectly filed as a civil lawsuit, they are properly transferred to the family law court. (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1152 ["Because this matter arises under the Family Code, the matter is remanded to the family court for further proceedings"]; *Morgan v. Somervell* (1940) 40 Cal.App.2d 398, 400; *People v. Superior Court* (1930) 104 Cal.App. 276, 281 [superior court has "inherent power to transfer a case to another department of the same court"]; see also Code Civ. Proc., § 402, subd. (a)(3) [if a case is filed in the wrong court, "the court may transfer the case on its own motion to the proper court location"].) Having been transferred to the family law court, the Civil Action was in the proper court having jurisdiction over it.

None of the cases cited by the family law court or Kamoda support dismissal for lack of jurisdiction. *Burkle v. Burkle* (2006) 144 Cal.App.4th 387, *Neal v. Superior Court* (2001) 90 Cal.App.4th 22, and d'*Elia v. d'Elia* (1997) 58 Cal.App.4th 415 all confirm the unremarkable proposition that disputes arising out of family law matters such as property division and compliance with dissolution stipulations and judgments belong in family law court, not civil court. None of those cases hold that a family law matter filed in civil court cannot be transferred to the family law court or that, once transferred to family law court, should be dismissed.

B. *The Civil Action Was Timely Under Section 2122*

          1. Was It Proper for the Family Law Court to Have Raised
             Section 2122 on Its Own?

Kamoda did not assert the statute of limitations of section 2122, subdivision (a) or any other time bar as an affirmative defense in his answer. The trial court raised the statute of limitations on its own initiative and, in connection with the OSC re dismissal, found that Nishida's claims were time–barred. Nishida argues that by so doing, the family law court violated its duty of neutrality and the "party presentation" principle (*United States v. Sineneng–Smith* (2020) 590 U.S. 371, 376) and denied her due process.

The statute of limitations is usually considered an affirmative defense and may be deemed waived or forfeited if, as here, it is not asserted by the defendant. (E.g., *Adams v. Paul* (1995) 11 Cal.4th 583, 597 ["The statute of limitations is an affirmative defense that is forfeited if not appropriately invoked by the defendant"]; *Shenefield v. Kovtun* (2024) 106 Cal.App.5th 925, 934 ["If not timely and appropriately invoked by a defendant, a statute of limitations defense is waived"].)

The justification offered by Kamoda for the family law court first raising the time bar of section 2122, subdivision (a) is that its time limits are jurisdictional and may be raised at any time, either by a party or the court.

10

The authority for that proposition is slim indeed.[3] We need not weigh in on that subject because, we conclude, the family law court erred by dismissing the Civil Action.

### 2. The Civil Action Was Filed Within Two Years of Nishida's Discovery of the Alleged Fraud

There are three statutory remedies in the family law court for postjudgment relief based on breach of fiduciary duty. The first remedy is provided by Code of Civil Procedure section 473, subdivision (b). It grants a court discretion to set aside a judgment based on the grounds of mistake, inadvertence, surprise, or excusable neglect within six months after entry of judgment. (*In re Marriage of Georgiou & Leslie* (2013) 218 Cal.App.4th 561, 570.)

After the time period for seeking relief under section 473 has elapsed, section 2120 et seq. provides the exclusive grounds and time limits for an action or motion to set aside a marital dissolution judgment adjudicating division of property. (*In re Marriage of Georgiou & Leslie, supra*, p. 570.) Section 2120, subdivision (a) recognizes that "[t]he State of California

---

[3] In effect, no authority supports the proposition that the time limits of section 2122 are jurisdictional. Only two cases address the matter. In *In re Marriage of Georgiou & Leslie* (2013) 218 Cal.App.4th 561, 575 the Court of Appeal stated that because the wife had not filed her set aside action within the one–year limitations period of section 2122, subdivision (f), "the family court lacked jurisdiction over the matter and summary adjudication was proper." In support of that proposition the court cited one authority: *In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 501. In that case, the Court of Appeal concluded the six-month period under Code of Civil Procedure section 473, subdivision (b) and the one-year period under section 2122, subdivision (e) had expired and "[t]he trial court therefore had *no jurisdiction* to modify the judgment in this case." (*Marriage of Thorne & Raccina, supra*, at page 500, italics added.) In support of that proposition, the Court of Appeal cited nothing and provided no analysis.

has a strong policy of ensuring the division of community and quasi-community property in the dissolution of a marriage" and that "[t]he public policy of assuring finality of judgments must be balanced against the public interest in ensuring proper division of marital property, in ensuring sufficient support awards, and in deterring misconduct." (§ 2120, subds. (a), (c).)[4]

Relevant here is subdivision (a) of section 2122 (section 2122(a)), which provides: "The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following: [¶] (a) Actual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding. An action or motion based on fraud shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the fraud."

Finally, section 1101, subdivision (a) establishes that a spouse has a claim against the other spouse "for any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate." A claim for breach of fiduciary duty under section 1101 must be commenced "within three years of the date a petitioning spouse had actual knowledge that the transaction or event for which the remedy is being sought occurred." (§ 1101, subd. (d)(1).)

---

[4] Section 2121, subdivision (a) states, in relevant part, "[i[n proceedings for dissolution of marriage . . . , the court may, on any terms that may be just, relieve a spouse from a judgment, or any part or parts thereof, adjudicating support or division of property, after the six-month time limit of Section 473 of the Code of Civil Procedure has run, based on the grounds, and within the time limits, provided in [Family Code sections 2120 et seq.]."

12

The family law court concluded the Civil Action was untimely under section 2122(a) because it was not filed in the family law court before December 15, 2019, which was one year after the stipulation was entered as an order.[5] The family law court concluded that section 1101 was inapplicable to Nishida's claims because a breach of fiduciary duty claim seeking to set aside a property division judgment that had adjudicated a particular asset or liability is subject to the time limits of section 2122, not those of section 1101, subdivision (d). (See *In re Marriage of Georgiou & Leslie, supra*, 218 Cal.App.4th at pp. 574–576; *In re Marriage of Thorne & Raccina, supra*, 203 Cal.App.4th at p. 501.)

The family law court erred by concluding the Civil Action was time–barred under section 2122(a). Nishida and Kamoda entered into the stipulation in December 2018. Nishida alleged that from October through December 2018 Kamoda "represented in multiple declarations under penalty of perjury that he was going to be imminently fired from his employer, Fourteen Golf, and that the decision to terminate him had already been made, thereby arguably triggering 'immediate and specific tax liability.'" She alleged that based on those representations, she agreed to take only $37,260 from the Retirement Asset.

Nishida alleged those representations were false because Kamoda had not been terminated from his employment. She alleged that "[she] discovered [Kamoda]'s continued employment in late 2019 by conducting internet research into M[asashi]'s employment status, and

---

[5] It is undisputed that the Civil Action was commenced more than six months after the stipulation was entered as a court order and therefore was untimely under Code of Civil Procedure section 473, subdivision (b).

discovered a November 4, 2019 press release indicating that [Kamoda] was still employed with Fourteen Golf." Nishida filed the Civil Action just a few months later, in January 2020.

As Nishida's counsel argued, the family law court's OSC re dismissal was effectively a demurrer or motion for judgment on the pleadings. In reviewing a judgment resulting from the sustaining of a demurrer or granting a motion for judgment on the pleadings, we assume the truth of the properly pleaded allegations of the complaint. (*Schifando v. City of Los Angeles* (2003) 31 Cal. 4th 1074, 1081; *People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.) We therefore accept as true Nishida's allegations that she did not discover the fraud until late 2019. The one–year period of section 2122(a) commences when the complaining party discovered, or should have discovered, the fraud. Nishida filed the Civil Action in January 2020, just a few months after she alleged she discovered the fraud, which was well-within the one–year limitations period of section 2122. Indeed, Kamoda agrees that Nishida's civil complaint was "timely filed within the one–year discovery period."

### 3. Initially Filing in the Family Law Court Was Unnecessary to Obtain Relief Under Section 2122

The family law court concluded that to obtain relief under section 2122 for fraud, Nishida had to have filed a set aside motion in the family law court before December 15, 2019. We disagree.

Nishida filed a civil complaint within the limitations period, and although she perhaps should have filed a set aside motion in the family law court, she did file her complaint in the Orange County Superior Court, and that is sufficient. (*See Chantal S., supra,* 13 Cal.4th at p. 201 [family law

14

court "is not a separate court with special jurisdiction"]; 2 Witkin, Cal. Proc., *supra*, Courts, § 284 ["subject matter jurisdiction is not affected" in conflict between "different departments of the same court"].) A matter incorrectly filed as a civil law action can be transferred to the family law court, as the Civil Action was in this case.

We do not see the possible mistake of filing an action instead of a set aside motion to be fatal. Section 2122 permits "an action or motion based on fraud." (See Hogoboom et al., Cal. Practice Guide: Family Law (The Rutter Group 2024) ¶¶ 16:135, 16:136, p. 16–44 (italics added).) Nishida filed an action. As with so many family law issues, there is no case law on when to file an action and when to file a set aside motion, and the correct one to file in this case was not altogether clear.[6] If necessary to prevent dismissal and permit a decision on the merits, the complaint (as amended) could simply be treated as a set aside motion under section 2122(a).

---

[6] The Rutter Group treatise on family law makes the comment that a set aside motion is the proper way to proceed under section 2120 so long as the underlying marital dissolution action is pending in family law court. (Hogoboom et al., *supra*, Cal. Practice Guide: Family Law, ¶ 16:136 at p. 16-44.) Relief is properly sought by separate action "once the underlying [marital] dissolution proceeding becomes 'final' (no support, custody/visitation orders and the time for appeal has passed) and the family court thus loses jurisdiction over the matter." (*Ibid*.)

Here, the judgment of dissolution had been entered, there were no custody or visitation orders, and the time to appeal had passed. Although, under the judgment of dissolution, the family court retained the "broadest possible jurisdiction . . . to enforce all provisions and resolve all disputes arising here from," under the stipulation, the family law court retained jurisdiction only over the payments and the subject residence until paid in full. The final payment on the Retirement Asset was due on December 1, 2019.

More importantly, filing the complaint satisfied the general purposes of a statute of limitations. Those purposes are to "protect defendants from the stale claims of dilatory plaintiffs" and "to stimulate plaintiffs to assert fresh claims against defendants in a diligent fashion." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395.) Nishida diligently pursued her claims of fraud and breach of fiduciary duty against Kamoda. Her complaint, though not filed as a set aside motion in family law court, imparted notice of her allegations of fraud and breach of fiduciary duty, and those same allegations could form the basis for a set aside motion under section 2122. The labels placed by Nishida on her claims are not important: In considering whether a complaint pleads facts entitling the plaintiff to relief, "[e]rroneous or confusing labels attached by the inept pleader are to be ignored." (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908.)

Allowing Nishida to proceed, even if she mistakenly filed an action instead of a set aside motion, comports with the policies advanced by section 2120 et seq. Assuring the finality of judgments is an important policy, but, as section 2120 explains, that policy is not controlling and must be balanced against "the public interest in ensuring proper division of marital property, in ensuring sufficient support awards, and in deterring misconduct." (§ 2120, subds. (a), (c).)

## II. The Family Law Court Erred by Denying Nishida Leave to Amend

In February 2023, before the Civil Action was transferred to the family law court, Nishida brought a motion for leave to amend her complaint by (1) changing the name of the fraud cause of action to "Family Code section 2122," (2) adding that the breach of fiduciary duty cause of action was pursuant to section 1101, (3) changing the remedies sought from tort

16

damages to "award of division up to an additional $72,740" and "[a]ll remedies under Family Code section 1101," and (4) deleting the request for punitive and treble damages. The civil court denied Nishida's motion for leave to amend on the ground amendment would be futile.

Although denial of leave to amend is reviewed for abuse of discretion, "motions for leave to amend are liberally granted." (*Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1124.) Under that standard, we believe the motion for leave to amend should have been granted here. The amendments would have brought the complaint in conformance with the requirements of the Family Code. As we have noted, the labels and titles placed by Nishida on her complaint are not controlling (*Saunders v. Cariss, supra*, 224 Cal.App.3d at p. 908.) Instead, the court must look to "the actual gravamen" of the complaint "to determine what cause of action, if any, he stated, or could have stated if given leave to amend." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387.)

Leave to amend may be denied if amendment would not cure the defects in the pleading. (*Royalty Carpet Mills, Inc. v. City of Irvine, supra*, 125 Cal.App.4th at p. 1124.) The family law court found the proposed amendments would be futile because they would "have no impact on [Nishida]'s failure to file a timely set aside motion in family court" and would not "convert a civil case into a family law post judgment set aside." As we have concluded, the Civil Action was timely under section 2122(a), jurisdiction issues were resolved by transferring the matter to the family law court and filing an action instead of a set aside motion, if incorrect, was not fatal. The family law court did not find, and Kamoda does not argue, that Nishida's complaint fails to plead facts sufficient to state a claim for relief under section 2122, subdivision (a). Thus, granting leave to amend to allow

17

Nishida to rename her causes of action and restate the remedies sought to conform to sections 2122 and 1101 would not have been futile.

We do not address whether Nishida may seek relief under section 1101. That issue may be raised by an appropriate motion or challenge to the pleadings in the family law court.

### III. The Civil Court Did Not Err by Granting Kamoda's Motion for Relief From Default

Nishida argues the civil court erred by granting Kamoda's motion for relief from default.[7] We conclude the civil court did not err by granting Kamoda relief from default.

A. *Background*

Nishida filed her civil complaint on January 21, 2020. According to the proof of service filed with the court, substitute service of the summons and complaint was made on March 20, 2020 after six attempts at personal service.

Nishida first attempted to file a request for entry of default against Kamoda on June 10, 2021. The court clerk rejected that request for entry of default on the ground Nishida had not served a statement of damages pursuant to Code of Civil Procedure section 425.115.

On July 8, 2021, Kamoda's counsel filed a declaration in support of an automatic 30–day extension of time pursuant to Code of Civil Procedure section 435.5. Counsel declared that he intended to file a motion to strike

---

[7] An order granting relief from entry of default only, and not to vacate a default judgment, is reviewable on an appeal from a final judgment or order. (Code Civ. Proc., § 906; *Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 531.)

Nishida's request for punitive damages and therefore was entitled to the automatic extension of time. Nishida attempted to file requests for entry of default on July 14 and 17, 2021, but the court clerk rejected them on the ground Kamoda had filed a declaration pursuant to Code of Civil Procedure section 435.5. The court clerk had also rejected a request for entry of default on July 16 on the ground it was accompanied by a declaration asserting the clerk had improperly rejected the request made on July 14.[8]

On August 10, 2021, the court clerk entered a default against Kamoda. On the same day, Kamoda tried to file an answer. The court clerk rejected the answer because a default had been entered.

B. *Kamoda's Motion to Set Aside Entry of Default*

Kamoda brought a motion pursuant to Code of Civil Procedure section 473, subdivision (b) to set aside the entry of default on the ground of attorney error. Kamoda's counsel submitted a declaration stating he had calendared the wrong date as the deadline for responding to the complaint. Counsel declared that the thirtieth day after the filing of the declaration regarding the 30–day automatic extension of time under section 435.5 was Saturday, August 7, 2021, making the deadline for responding to the complaint Monday, August 9, 2021 but that he had made a calendaring error by concluding the response was due on Tuesday, August 10, 2021. Counsel attempted to electronically file an answer on August 10, but the clerk rejected the filing on the ground a default had been entered four hours earlier. Counsel declared: "The calendaring error on my part gave Plaintiff the

_____

[8] Nishida also claims to have attempted to file a request for entry of default on July 21, 2021. She provides no record citation and we have found nothing in the record to show that she made such an attempt.

19

opportunity to request the entry of default, and the entry of default was the direct result of [defense counsel's] mistake in calendaring an erroneous date for Defendant's deadline to file a responsive pleading." (Underscoring omitted.)

Nishida opposed the motion for relief from default on the same grounds which she raises in this appeal.

The civil court granted the motion for relief from default. The court found: "Defendant's attorney submitted a declaration explaining he miscalendared the due date for Defendant's motion to strike, calendaring the deadline as August 10, 2021, instead of August 9, 2021. . . Defendant's counsel's affidavit of fault is sufficient to set aside the default."

C. *Background Law and Standard of Review*

Code of Civil Procedure section 473, subdivision (b) contains distinct provisions for discretionary relief and mandatory relief from default.[9] (*Bailey v. Citibank, N.A.* (2021) 66 Cal.App.5th 335, 348.) Discretionary relief is reserved for excusable neglect, while mandatory relief applies even to inexcusable neglect of an attorney resulting in his or her client's default if the attorney submits an adequate affidavit of fault. (*Ibid*.) When the attorney

[9] The mandatory relief provision of section 473, subdivision (b), states as follows: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."

submits a compliant affidavit, relief from default is mandatory even if the attorney's neglect was inexcusable. (*Id*. at p. 349) "However, relief may be denied if the court finds the default was not in fact the attorney's fault, for example when the attorney is simply covering up for the client's neglect." (*Ibid.*)

An order granting or denying relief under Code of Civil Procedure section 473, subdivision (b) is reviewed under the abuse of discretion standard. (*Shapell SoCal Rental Properties, LLC v. Chico's FAS, Inc.* (2022) 85 Cal.App.5th 198, 212 (*Shapell*).) Whether the requirements for mandatory relief under section 473, subdivision (b) have been satisfied is reviewed under the substantial evidence standard if the evidence is disputed and under the de novo standard if the evidence is undisputed. (*Bailey v. Citibank, N.A., supra*, 66 Cal.App.5th at p. 348.)

""""[T]he provisions of section 473 of the Code of Civil Procedure are to be liberally construed and sound policy favors the determination of actions on their merits." [Citation.]' [Citation.] '[B]ecause the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default.'" (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 371-372.)

D. *Nishida's Arguments Do Not Support Reversal*

Based on counsel's declaration attesting to his mistake, inadvertence, surprise, or neglect, the civil court was obliged under section 473, subdivision (b) to grant Kamoda's motion for relief from default. The civil court found the default or dismissal was in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. The court also found that Nishida has not shown any prejudice from granting relief from default.

21

Nishida challenges the order granting relief from default on several grounds. First, she argues that Kamoda's answer was actually 15.5 months late because Kamoda had been substitute served on March 20, 2020. Nishida did not, however, seek to enter a default until June 2021.

Second, Nishida argues the court clerk erred by rejecting her efforts to file a request for entry of default on June 10 2021. The court clerk rejected that request for entry of default on the ground Nishida was seeking punitive damages but had not served a statement of damages under Code of Civil Procedure section 425.115. Nishida asserts the clerk erred because, she argues, section 425.115 states that a default *judgment* for punitive damages may not be entered without service of a statement of damages.

Nishida is incorrect. Subdivision (f) of section 425.115 states: "The plaintiff shall serve the statement [of damages] upon the defendant pursuant to this section before a default may be taken, if the motion for default judgment includes a request for punitive damages." Although subdivision (f) has a verb tense issue—it should read "the plaintiff shall *have served* the statement"—its meaning in clear. "In an action in which the plaintiff seeks to recover punitive damages, the plaintiff can reserve the right to seek punitive damages on a default judgment by serving a statement of punitive damages on the defendant *before the defendant's default is taken*." (*Matera v. McLeod* (2006) 145 Cal.App.4th 44, 60, italics added; see *Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 867 ["[I]f punitive damages are to be awarded in a default judgment, the defendant must be notified of the specific amount sought *prior to entry of the default*"].) The clerk was correct to reject the request for entry of default made on June 10, 2021.

Next, Nishida argues the court clerk erred by rejecting her requests for entry of default on July 14 and 17, 2021. The court clerk rejected

22

those requests on the ground Kamoda had filed a declaration pursuant to Code of Civil Procedure section 435.5 on July 8. Nishida argues the 30–day extension of Code of Civil Procedure 435.5 had no effect because it extended the time to file a motion to strike only from April 29, 2020 (the date on which the response to the complaint was due) to May 29, 2020. Code of Civil Procedure section 435.5, subdivision (a)(2) states, "[t]he 30-day extension shall commence from the date the motion to strike was previously due, and the moving party shall not be subject to default during the period of the extension." As Nishida points out, the date on which Kamoda's motion to strike was previously due was April 29, 2020—40 days after the date of service (Code of Civ. Proc., § 412.20, subd. (a)(3), 415.20, subd. (b)). The thirtieth day after April 29, 2020 was May 29, 2020, long before counsel filed his section 435.5 declaration.

However, Nishida took no action to compel the clerk to enter the default. Although she submitted a declaration to the clerk explaining the clerk's error, she did not seek a court order requiring the clerk to enter the default. We cannot reverse the court clerk, as Nishida suggests we do, because our jurisdiction extends only to appealable orders and judgments, and Nishida did not seek a court order to correct the clerk's rejection of her requests for entry of default.

Accordingly, as things stand, the default against Kamoda was entered on August 10, 2021 and not earlier. The calendaring mistake made by his counsel therefore did in fact result in the entry of default because, absent the mistake, counsel would have filed Kamoda's answer on August 9, 2021—one day before the default was entered.

Nishida claims it "makes no sense" that counsel would have made a calendaring mistake. The trial court is the exclusive judge of the credibility

23

of witnesses testifying by declaration (*Shapell, supra*, 85 Cal.App.5th at pp. 217-218), and the trial court impliedly found Kamoda's counsel to be credible. Counsel's declaration was not "incredible on its face, inherently improbable, or wholly unacceptable to reasonable minds." (*TRC Operating Co., Inc. v. Chevron USA, Inc.* (2024) 102 Cal.App.5th 1040, 1106.)

Nishida argues that the true cause of Kamoda's default was not miscalendaring by counsel but Kamoda avoiding service of process and, once served, by "refus[ing] to recognize the jurisdiction of the court" until Nishida tried to have a default entered. Assuming Kamoda did avoid service, that could not have been the cause of the default because default could only be entered once he had been served.

If Kamoda "refused to recognize the jurisdiction of the court," Nishida failed to hold him accountable for over a year. According to the proof of service, Kamoda was served by substitute service on March 20, 2020, yet Nishida did not attempt to have his default entered until June 10, 2021. Kamoda's counsel declared that he confirmed with Kamoda that "neither he nor anyone in his household was served with the Verified Complaint" and that Kamoda "learned of the lawsuit through an unrelated legal service offering representation." Counsel declared that on July 2, 2021, he had located the complaint online and obtained a copy of it and on July 8, just six days later, filed his declaration under Code of Civil Procedure section 435.5. To the extent necessary to uphold the order granting relief from default, we presume the civil court found those assertions to be true. (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 859 ["we presume the court found every fact and drew every permissible inference necessary to support its judgment or order"]; *Shapell, supra*, 85 Cal.App.5th at pp. 217-218.)

## DISPOSITION

The order dismissing the Civil Action and the order denying Nishida's motion for leave to amend are reversed and the matter is remanded for further proceedings. The order granting Kamoda's motion for relief from default is affirmed. Nishida may recover costs on appeal.


SANCHEZ, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SCOTT, J.

25